authorities construing the federal statute, and announces the conclusion I have just stated, that the seal itself, its presence upon a copy of what purports to be a copy of the law, gives verity to the copy bearing the seal and furnishes presumptive evidence that the law bearing the seal is the law of the state of the seal.

You may draw a finding of facts in favor of the company on all grounds except on that one, and that is that the directory has not declared the necessity for taking this land, and for that reason the proceeding is dismissed.

---

## VALIDITY OF ORDINANCE PROVIDING FOR LICENSING MOTOR VEHICLES.

Court of Common Pleas of Brown County.

CYRUS WATSON v. VILLAGE OF RIPLEY.

Decided, June 15, 1917.

*Municipal Corporations—Authority to License Motor Vehicles Used for Hire—Invalidity of Ordinances Which Are Not Regulatory But Nothing More Than a Tax Under the Guise of a License.*

A municipality has power to regulate and license the use of its streets by motor vehicles used for hire, but the license is an incident to the right to regulate, and the fee charged must be reasonably proportionate to the expense incurred in issuing the license and for police supervision; from which it follows that an ordinance which provides, in addition to a charge of one dollar, a further charge of $25 for licensing motor vehicles used for hire, which fee is to be used in repairing the streets, is not regulatory, and the fee so imposed is not a tax, and the provision for its collection is void.

*J. W. Bagby,* for plaintiff in error.
*E. R. Young,* contra.

CLEVENGER, J.

This cause comes into this court on a petition in error from a judgment and finding of the mayor of Ripley, Ohio. The proceeding was a prosecution instituted against plaintiff in error for the alleged violation of a village ordinance. The original ordinance was passed by the council of said village, December 14, 1916, but on January 11, 1917, Section 2 of said ordinance was amended. It was for the alleged violation of this ordinance, as amended, that plaintiff in error was arrested and convicted by said mayor.

Counsel on both sides united in stating to the court that they were anxious for a decision on the broad question of the right of a municipality to pass such an ordinance, and asked the court not to dispose of the petition in error on some other ground.

The ordinance in question, and said amendment thereto, was adopted under the alleged authority of Sections 3632 and 3675, G. C. Section 1 of the ordinance reads as follows:

"That every person owning a vehicle or motor vehicle used for the transportation of persons or property for hire is hereby required to take out a license therefor."

Section 2 provides the fee to be paid for such license, and under the heading (b) says: "For motor vehicle or motor vehicles, $50.00."

Section 3 provides that said license shall be taken out by the year; shall be issued by the mayor on application therefor, and that the mayor shall be entitled to a fee of $1.00 for each license so issued, but does not provide that said fee shall be paid out of the money so obtained.

Section 4 provides that all moneys and receipts derived from the enforcement of the ordinance shall be credited to a fund known as the public service street repair fund, and shall be used for the sole purpose of repairing streets, etc.

Section 5 provides a penalty of not less than $5, nor more than $50, for violation of the ordinance.

The amendment of the ordinance changed Sec. 2 so that the fee "for motor vehicle" should be $25, and each additional

motor vehicle $5. One of the questions raised at the trial and preserved in the record is the validity of said ordinance in its original form and as amended.

The question is one not squarely decided in Ohio. In the act of April 2, 1906 (98 O. L., 320), Section 19 expressly prohibited a municipality from passing any such ordinance, and decisions based upon that act are not authority now so far as they relate to the question at bar. This act was repealed and re-enacted in an amended form May 9, 1908 (99 O. L., 538), and said Section 19 eliminated therefrom, and no such prohibition has been in the statutes from that time until the present.

The sections of the statutes under which the authority to pass this ordinance is claimed read as follows:

"Section 3632. To regulate the use of carts, drays, wagons, hackney coaches, omnibuses, automobiles, and every description of carriages kept for hire or livery stable purposes; to license and regulate the use of the streets by persons who use vehicles, or solicit or transact business thereon; to prevent and punish fast driving or riding of animals, or fast driving or propelling of vehicles through the public highways; to regulate the transportation of articles through such highways and to prevent injury to such highways from overloaded vehicles, and to regulate the speed of interurban, traction and street railways cars within the corporation."

"Section 3675. To license the owners of vehicles used for the transportation of persons or property, for hire, and all undertakers and owners of hearses, but the owners of such vehicle may be made liable for the breach of any ordinance regulating the conduct of the drivers thereof. All moneys and receipts, in any municipal corporation, which are derived from the enforcement of any ordinance or law requiring the payment of a vehicle license fee, shall be credited and paid into a separate fund, which fund shall be known as the public service street repair fund. All moneys and receipts so credited to such fund shall be used for the sole purpose of repairing streets, avenues, alleys and lanes within such municipal corporation."

These sections occur in the "Enumerated Powers" delegated to municipalities by the Legislature. Section 3632 confers primarily regulatory powers; both sections contain authority to

license, and they must be construed in the light of the power intended to be thus delegated. It will be noted that in neither section is there any reference to a power to tax being delegated. It is plain that the Legislature intended to confer the power to license as an incident to the power to regulate.

In so far as the state has regulated the operation of motor vehicles in municipalities, it is obvious that the local authorities could not pass an ordinance contravening such regulation, but the state has wisely left a large part of the regulation of the use and operation of motor vehicles on the streets of the municipalities of the state to the local authorities. The state has delegated no authority to license vehicles, except such as are used for hire within the municipality, or to solicit or transact business on the streets. The ordinance in question does not offend in this respect, as it limits the license to those vehicles used for hire.

In Crane v. Middletown, 21 C.C.(N.S.) 173, the court of appeals, in discussing the question whether the general laws regulating the operation of motor vehicles have withdrawn the power from a municipality to regulate in any manner, say:

"This clearly would not be the case in regard to a proper municipal ordinance under Section 3632, requiring a license for the use of automobiles kept for hire or delivery purposes."

The Supreme Court, in Frisbie v. Columbus, 80 Ohio St., 686, 690, say that it is not necessary to determine whether municipalities, under the statutes as they exist since the act of May 9, 1908 (99 O. L., 538), may regulate and license automobiles. The above comment of the court of appeals in Crane v. Middletown, supra, is the nearest to an authority on the subject I have found in Ohio.

Going back to a consideration of the general principles underlying the enactment of these statutes, it seems clear the Legislature recognized that in order to make the power to regulate effectual, so far as it applied to those who made a business of occupying the streets of a municipality, some power must be delegated to enable the proper authorities to keep a list of such

persons, and the character and kind of vehicles that were thus to be used. No such regulation could be made really effective without a power to license, which is nothing more than a re-- quirement that one who thus desires to use the public streets must go to the proper municipal officer, state his intentions, give a description of the kind of a vehicle he intends to use, and get a permit therefor. A license is nothing more than written evidence of these facts. The law further recognizes the fact that such municipality should not be required to keep such records and issue such documents of authority and pay the expenses thereof out of funds raised by taxation for other purposes, as such permit relates only to the right of an individual to carry on his private business on the public streets, and has, therefore, given such municipality power to require the person so desiring to carry on his private business on the public streets to pay the expense of keeping such records and granting such permit together with police supervision, which is termed a license fee. In Ohio, at least, municipalities are given no further powers in respect of licensing vehicles that so occupy the streets. No authority to tax has been granted, and it would be of doubtful constitutionality if such authority were attempted to be granted.

Having decided that municipalities have the right to so license as an incident to the right to regulate, let us examine the ordinance in question and see if it falls under the definition given.

The ordinance does not purport to be a regulatory measure in any particular. It does not specify a single rule that the operators of motor vehicles must observe in the use of the streets. It does not provide for the expense of issuing the license being taken out of the money received therefor, but requires that all the money and receipts derived from the enforcement of the ordinance shall be used for the repair of the streets. It is perfectly apparent that the intention in passing the ordinance was not to regulate the use of vehicles on the streets of the municipality, but to provide a new source of revenue for the repair of the streets. The original ordinance has a

flat license fee of $50 per year. The amendment changes this to $25 for one and $5 for each additional vehicle. In either instance it is clear that it was intended as a revenue measure. It is nothing more than a tax under the guise of a license. Such license fee to be valid must be reasonably proportionate in amount to the expense incurred in keeping such records and issuing such document · and police supervision. The fee of $1 to be paid the officer who does all the work and keeps the record would suggest the idea that a fee to be reasonably proportionate to the expense could not be far above that sum.

The ordinance herein construed is quite different from the instance of a "jitney bus" line that occupies the streets like a street railroad, making regular trips over stated streets. Many requirements might be attached to the latter that would be unreasonable to attach to the former.

My conclusions are that under the laws of Ohio a municipality has the right to regulate and license the use of its streets by motor vehicles for hire, but that the license is an incident to the right to regulate, and the fee charged must be reasonably proportionate to the expense incurred in issuing the license and the police supervision; that the ordinance in question is not a regulatory ordinance at all, and the license required is nothing more than a tax, and, therefore, the ordinance in so far as it relates to motor vehicles is void. The judgment of the mayor's court will be reversed with costs.